UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARCUS SHANNON,

Plaintiff,

v.

ALLSTATE NORTHBROOK
INDEMNITY CO., et al.,

Defendants.

Case No.: 25-cv-01123-AJB-MMP

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

(Doc. No. 9)

Before the Court is Defendant Allstate Northbrook Indemnity Company's ("Allstate") Motion for Summary Judgment or, Alternatively, Partial Summary Judgment. (Doc. No. 9.) The Court set a briefing schedule requiring Plaintiff Marcus Shannon ("Shannon") to file a response on or before February 17, 2026. (Doc. No. 10.) Shannon did not respond timely. (Doc. No. 15.) Nevertheless, the Court continued Shannon's response deadline so that it may have the benefit of full briefing. (*Id.*) The matter is now fully briefed. (Doc. Nos. 9; 16; 17.) Pursuant to Local Rule 7.1.d.1, the Court finds this matter suitable for disposition without further oral argument.

For the following reasons, the Court **GRANTS** Allstate's motion.

# I.    BACKGROUND

## A.    Factual Background

In 2021, Shannon purchased a 2021 Chevrolet Silverado (the "Truck"). (Doc. Nos. 9-13 at 3; 9-19 at 26.)[1]

On March 18, 2024, Shannon added the Truck to his Allstate insurance policy. (Doc. Nos. 1-2 ¶ 8; 1-6 at 3, 5, 7; 9-8 at 2.) In doing so, Shannon only sought comprehensive coverage for the Truck. (Doc. No. 9-8 at 8; *see also* Doc. No. 1-6 at 4–7.) Such coverage included protection against accidental loss from theft. (*See* Doc. No. 9-6 at 35; *see also* Doc. No. 1-6 at 4–7.) The policy states that it "will not apply to any claim in which an insured person has concealed or misrepresented any material fact or circumstance." (*See* Doc. No. 9-6 at 13.)

On April 2, 2024, Shannon filed a claim with Allstate reporting that the Truck was stolen. (Doc. Nos. 1-2 ¶¶ 12–13; 1-6 at 4, 6–8; 9-2 ¶ 6; 9-9.)

Allstate began investigating Shannon's claim. (Doc. Nos. 9-2 ¶ 7; 9-7 at 2.)[2] As a part of its investigation, Allstate asked Shannon multiple times if he still had the keys in his possession. (*See, e.g.*, Doc. Nos. 9-7 at 8; 9-11 at 4; 9-13 at 2.) Each time Shannon said he still had the keys in his possession. (*See, e.g.*, Doc. Nos. 9-7 at 8; 9-11 at 4; 9-13 at 2.) On April 10, 2024, Shannon submitted an Affidavit of Automobile Theft to Allstate, indicating therein that he still had the Truck's keys and providing a photo of two Chevrolet keys. (Doc. Nos. 9-13 at 2; 9-14.)

On April 12, 2024, Allstate asked Shannon to provide the Truck's keys. (Doc. No. 9-7 at 9.) Shannon provided two sets of keys. (Doc. No. 9-16 at 14–15; *see also* Doc. No. 9-2 ¶ 11.) However, Allstate determined that the keys belonged to a different vehicle—one

---

[1]    Page citations refer to the pagination generated by the Case Management/Electronic Case Files system.

[2]    The Court notes that Document Number 9-7 contains extremely small font that is difficult to read without technological enhancement. Allstate should consider producing such investigation notes in a more user-friendly format in the future.

that had been reported stolen by its owner, David Krivasich. (Doc. Nos. 9-2 ¶¶ 11, 13; 9-7 at 10; 9-15; 9-17.) Allstate considered these circumstances suspicious. (*See* Doc. No. 9-2 ¶ 7.)

Given its concerns, Allstate asked to examine Shannon under oath. (*See* Doc. No. 9-2 ¶ 12.) Allstate conducted the examination on June 26, 2024. (*Id.*; *see also* Doc. No. 16-2.) During the examination, Shannon was represented by counsel Joshua Searcy and Shannon stated that he provided the Truck's keys to Allstate. (Doc. No. 16-2 at 2, 24–26.)

In a subsequent deposition during which Shannon was also represented by Mr. Searcy, Shannon testified that he told Allstate that the keys he provided belonged to the Truck. (Doc. No. 9-19 at 4, 28.) When asked "[i]f those keys were not to that [Truck], it would have been untrue for you to say they were for that [Truck], correct?" Shannon responded, "[t]hat's correct." (*Id.* at 30.) It does not appear that Mr. Searcy asked Shannon to clarify any of his answers. (*See generally id.*)

On July 30, 2024, Allstate denied Shannon's claim. (Doc. Nos. 1-2 ¶ 17; 1-6 at 4, 6, 8; 9-18.)

**B.     Procedural Background**

In August 2024, Shannon initiated this Action in San Diego County Superior Court. (Doc. No. 1-2.) Shannon alleges that Allstate breached the terms of their insurance contract by denying Shannon's claim and failing to adequately investigate the purported loss of his Truck. (*Id.* ¶¶ 5–22.) Shannon requests punitive damages for the alleged violations. (*Id.* ¶ 22.)

Shannon served Allstate with a complaint two months later. (Doc. No. 1-7.) Allstate answered the complaint and asked Shannon to identify the potential amount in controversy. (Doc. Nos. 1-3; 1-5 at 4; 2.)

On April 23, 2025, Shannon served Allstate with special interrogatory responses indicating that he had suffered approximately $95,000 in special damages and incurred approximately $30,000 in attorney fees. (Doc. No. 1-6 at 9–11.)

On May 2, 2025, Allstate removed the Action to this Court. (Doc. No. 1.)

Following an early neutral evaluation and discovery (Doc. No. 7; *see also, e.g.*, Doc. No. 9-19), Allstate seeks summary judgment (Doc. No. 9).

This Order follows.

## II.    LEGAL STANDARD

Granting summary judgment under Federal Rule of Civil Procedure 56 is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The movant has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Celotex*, 477 U.S. at 322, 324. The opponent must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). In considering evidence during the summary judgment stage, courts do not weigh conflicting evidence or make credibility determinations. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Instead, courts draw all inferences in the light most favorable to the non-moving party. *Id.*

25-cv-01123-AJB-MMP

## III.   DISCUSSION

### A.   Count 1 – Breach of Contract

"The essential elements of a breach of contract claim are the existence of an enforceable contract, the defendant's breach, and damages to the plaintiff caused by the breach." *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017).

Under California law, insurers may deny a claim if the insured party knowingly, intentionally, and with the intent to defraud misrepresents or conceals a material fact during the presentation of the insurance claim. *Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407, 1418–19 (1988). A misrepresentation is material if it "concerns a subject reasonably relevant to the insured's investigation, and if a reasonable insurer would attach importance to the fact misrepresented." *Id.* at 1417; *see also Express Textile Consultants Inc. v. Gen. Accident Ins. Co. of Am.*, 22 F. App'x 747, 748–49 (9th Cir. Nov. 5, 2021). Furthermore, "the intent to defraud the insurer is necessarily implied when the misrepresentation is material and the insured wilfully [*sic*] makes it with knowledge of its falsity." *Cummings*, 202 Cal. App. 3d at 1418. Courts may find a representation to be knowing and willful even absent an admission of known falsity. *See, e.g.*, *Casual 12, Inc. v. Sentinel Ins. Co., Ltd.*, No. CV 16-05619-BRO-AGRx, 2017 WL 5624293, at *11–13 (C.D. Cal. Aug. 24, 2017).

Against this backdrop, Shannon alleges that Allstate breached the insurance contract because Shannon "performed all the terms and conditions of the [contract]," Allstate unreasonably asserted that Shannon did not provide sufficient information and documentation, and Allstate improperly denied his claim. (Doc. No. 1-2 ¶¶ 13, 16–17.)

Allstate responds that the insurance contract "precludes coverage if [Shannon] misrepresents or conceals material facts about his claim." (Doc. No. 9-1 at 9 (quoting Doc. No. 9-6 at 13).)

Shannon opposes summary judgment, arguing that Allstate has failed establish that his misrepresentation was made knowingly. (Doc. No. 16 at 8–9.)

Shannon's attempt to avoid summary judgment is unavailing.

25-cv-01123-AJB-MMP

The evidence before the Court shows that Shannon made a misrepresentation to Allstate. In its investigation, Allstate asked Shannon to provide the Truck's keys. (Doc. No. 9-7 at 9.) Instead of providing the Truck's keys to Allstate, Shannon provided keys that belong to someone else's stolen vehicle. (Doc. Nos. 9-2 ¶¶ 11, 13; 9-7 at 10; 9-15; 9-17.) Shannon nevertheless insisted under oath that he provided the Truck's keys to Allstate. (Doc. No. 16-2 at 24–26.) In a subsequent deposition, Shannon conceded that it would have been a lie for him to say that the keys belonged to the Truck if they, in fact, did not belong to the Truck. (Doc. No. 9-19 at 30.)

Shannon's misrepresentation that he provided the Truck's keys to Allstate is material. In his opposition, Shannon contends that this misrepresentation is merely relevant, not material, because it "does not necessarily suggest complicity in theft." (Doc. No. 16 at 9.) Shannon adds that "reasonable minds could differ on [the] importance [of the misrepresentation] to the claim investigation." (*Id.*) Shannon misunderstands the criteria for materiality. Again, a misrepresentation is material if it "concerns a subject reasonably relevant to the insured's investigation, and if a *reasonable insurer* would attach importance to the fact misrepresented." *Cummings*, 202 Cal. App. 3d at 1417 (emphasis added).

Here, Shannon acknowledges that the first element is met. (*See* Doc. No. 16 at 9.) The second element is also met because whether the provided keys matched the Truck would be important to a reasonable insurer. As Allstate lays out, "[i]f [Shannon] had the only keys and his truck was stolen, this suggests the theft was legitimate. If, however, he didn't have the keys (and he mispresented that he did) and his truck was missing, that suggests that Shannon was complicit in the alleged theft." (Doc. No. 9-1 at 11.) Shannon does not dispute that his non-possession of the Truck's keys *can* "suggest complicity in theft." (Doc. No. 16 at 9.) Under these circumstances, it is beyond question that a reasonable insurer would attach importance to whether Shannon actually possessed and submitted the Truck's keys. *See Cummings*, 202 Cal. App. 3d at 1417.

Lastly, the only reasonable inference to be drawn from the evidence is that Shannon made the misrepresentation willfully and with the intent to defraud. In ruling on the present

25-cv-01123-AJB-MMP

motion, the Court need not draw all *possible* inferences in Shannon's favor, only all *reasonable* ones. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002). Here, the only reasonable inference is that Shannon knew that the keys he provided to Allstate did not belong to the Truck.

On March 25, 2024, Shannon parked the Truck near his girlfriend's home. (Doc. No. 9-7 at 5.) Shannon then stored at least one of the Truck's keys in his girlfriend's home while they took a trip to New Orleans. (Doc. No. 16-2 at 21.) When Shannon returned from the trip on March 31, the key was in the same location where Shannon left them. (*Id.* at 23.) Shannon then took the key back. (*Id.* at 24.)

On April 2, 2024, Shannon reported to Allstate that the Truck had been stolen and claimed he had the Truck's keys in his possession. (Doc. No. 9-9; *see also* Doc. No. 9-7 at 3–5.) On that day, Allstate provided Shannon with an Affidavit of Automobile Theft to complete, which asked Shannon if he still had the Truck's keys in his possession. (Doc. Nos. 9-7 at 4; 9-13.) Three days later, on April 5, Shannon repeated to Allstate that he had both of the Truck's keys in his possession. (Doc. No. 9-11 at 4.) On April 10, Shannon executed the Affidavit of Automobile Theft, reaffirmed that he had both sets of keys in his possession, and provided a photograph of two keys to Allstate. (Doc. Nos. 9-13; 9-14; *see also* Doc. No. 16-2 at 25, 27.) Two days later, on April 12, Allstate notified Shannon that he would need to provide the Truck's keys to an investigator. (Doc. No. 9-7 at 9.)

On April 18, 2024, Shannon provided Allstate two Chevrolet keys. (Doc. Nos. 16-2 at 24; 9-14; 9-19 at 27.) Notably, Shannon indicated that he did not own another Chevrolet vehicle at that time. (Doc. No. 16-2 at 23.) Further investigation also revealed that the keys Shannon provided did not match the Truck, but instead belonged to someone else's vehicle that had been reported stolen. (Doc. No. 9-2 ¶ 11.)

Under these circumstances, it was evident to Shannon that the whereabouts of the keys were relevant to Allstate's investigation. (*See, e.g.*, Doc. Nos. 9-7 at 5; 9-11 at 4; 9-13 at 2.) Shannon accordingly knew that he would need to keep track of the Truck's keys' whereabouts from April 2, when Shannon received the Affidavit of Automobile Theft

25-cv-01123-AJB-MMP

asking if he still had the keys in his possession; to April 10, when Shannon provided Allstate with a photograph of two Chevrolet keys; to April 12, when Allstate notified Shannon that he would need to provide the keys; and to April 18, when Shannon provided Allstate with two keys. Yet instead of providing the Truck's keys, Shannon handed over keys that belonged to someone else's stolen vehicle. (Doc. No. 9-2 ¶ 11.) Shannon does not offer any explanation for how he came into possession of a stolen vehicle's keys. (*See generally* Doc. No. 16.)

Based on this information, the only reasonable inferences that can be drawn are that Shannon knew he had to keep track of the Truck's keys, procured a set of Chevrolet keys to show Allstate, and ultimately knew that the keys he provided did not belong to the Truck. "It is difficult to imagine that such a misrepresentation could be an honest mistake." *Morris v. Allstate Ins. Co.*, 16 F. Supp. 3d 1095, 1100 (C.D. Cal. 2014). This is so especially in light of Shannon's failure to address or explain how and why he had keys that belonged to someone else's stolen vehicle. *See id.*

Shannon nevertheless attempts to avoid these inferences by claiming in a new declaration that he "informed Allstate . . . that [he] had multiple sets of keys and was not able to check the ones [he] provided against the [Truck] because [the Truck] was not in [his] possession, but [he] believed them to be the correct keys." (Doc. No. 16-1 ¶ 7.) Shannon adds that he "keep[s] most of [his] keys in one area, which can be keys for twenty or more vehicles at a time, many of which look similar." (*Id.* ¶ 8.)

This last-ditch attempt is unavailing. Even assuming that Shannon was somehow confused by the number of keys he possessed for the various vehicles he owned, any claimed confusion completely fails to address how and why Shannon had keys that belonged to *someone else's* stolen vehicle.

Under these circumstances, the Court concludes that Shannon made a material misrepresentation to Allstate when he claimed that the keys he provided belonged to the Truck. The Court additionally draws the only reasonable inference based on the available evidence: Shannon made this misrepresentation knowingly and willfully. Allstate has thus

25-cv-01123-AJB-MMP

carried its burden to show that summary judgment on this count is proper because it was entitled to deny Shannon's claim. *Cummings*, 202 Cal. App. 3d at 1418–19; *Celotex*, 477 U.S. at 322.

### B.        Count 2 – Breach of Implied Covenant of Good Faith and Fair Dealing

An insurer breaches the implied covenant of good faith and fair dealing when it "unreasonably and in bad faith withholds payment of the claim of its insured." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683–85 (1988). Thus, an "insurer cannot deny the claim without fully investigating the grounds for its denial." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007) (internal quotation marks and citation omitted). The ultimate question in considering such a claim is "whether the refusal to pay policy benefits was unreasonable." *Opsal v. United Servs. Auto. Ass'n*, 2 Cal. App. 4th 1197, 1205 (1991) (internal quotation marks, citation, and emphasis omitted).

Shannon contends that "Allstate failed to undertake an adequate investigation of the claim, focusing on evidence and inferences that support Allstate's basis for denying the claim while ignoring and disregarding evidence that supports plaintiff's claim." (Doc. No. 1-2 ¶ 19.)

Allstate responds that Shannon cannot prevail on this claim because he must first establish that benefits were due under the insurance contract. (Doc. No. 9-1 at 11.) Alternatively, Allstate asserts that "a genuine dispute over whether [Shannon] was entitled to coverage" precludes this claim. (*Id.* at 11–12 (quoting *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346–47 (2001); *Franceschi v. Am. Motorists Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir. 1988)).)

Here, Allstate's investigation revealed that Shannon made a material misrepresentation to Allstate. (*Supra* at 6.) That material misrepresentation was knowing and intentional. (*Supra* at 6–8.) In turn, California law authorized Allstate to deny Shannon's claim. *Cummings*, 202 Cal. App. 3d at 1418–19. Allstate's refusal to pay any policy benefits was consequently more than reasonable. *Opsal*, 2 Cal. App. 4th at 1205.

25-cv-01123-AJB-MMP

The evidence before the Court thus demonstrates that Shannon cannot prove the elements of this claim, and Allstate is entitled to summary judgment on it. *Celotex*, 477 U.S. at 322.

### C.    Punitive damages

California law authorizes punitive damages "[i]n an action for the breach of an obligation not arising from contract" if a plaintiff proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).

In moving for summary judgment, Allstate asserts that the Court should "eliminate [Shannon's] claim for punitive damages because there is no evidence – let alone the requisite clear and convincing evidence – to support it." (Doc. No. 9-1 at 12.)

Shannon responds that Allstate's decision to perform a "selective investigation" and "mischaracterization of facts" "demonstrate[] a willful and conscious disregard for the truth and for Shannon's rights and supports a finding of malice and oppression." (Doc. No. 16 at 11.) Shannon adds that Allstate had made "a deliberate decision to deny the claim and then selectively gather evidence to support that decision." (*Id.* at 12.)

Allstate is correct. Shannon does not point to any evidence that Allstate has been guilty of oppression, fraud, or malice. *See* Cal. Civ. Code § 3294(a). In fact, Shannon does not provide a single record citation to support his arguments on this claim. Contrary to Shannon's unsupported arguments, the evidence shows that Allstate reasonably investigated Shannon's claim by accepting Shannon's claim submission (Doc. No. 9-9); allowing Shannon multiple opportunities to submit information (*see, e.g.*, Doc. No. 9-7); and giving Shannon multiple opportunities—including one with counsel present—to explain the underlying bases for his claim and to address any inconsistencies in his statements (Doc. Nos. 9-11; 16-2) before denying his claim.

Thus, Shannon has not offered any evidence, much less "clear and convincing evidence," that any of Allstate's actions here constitute "oppression, fraud, or malice." *See*

Cal. Civ. Code § 3294(a). Accordingly, Allstate is also entitled to summary judgment on Shannon's request for punitive damages. *Celotex*, 477 U.S. at 322.

## IV.    CONCLUSION

In light of the foregoing, the Court **GRANTS** Allstate's Motion for Summary Judgment. (Doc. No. 9.) The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

**IT IS SO ORDERED**.

Dated:  June 1, 2026

_____
Hon. Anthony J. Battaglia
United States District Judge

25-cv-01123-AJB-MMP